[Civ. No. 6170. Third Appellate District.—June 23, 1939.]

COUNTY OF TEHAMA (a Political Subdivision), Respondent, v. PACIFIC GAS AND ELECTRIC COMPANY (a Corporation), Appellant.

466

Thomas J. Straub, W. H. Spaulding and Paul E. Sloane for Appellant.

Clair Engle, District Attorney, for Respondent.

THOMPSON, J.—The defendant has appealed from a judgment which was rendered against it for failing to answer the

complaint to which a demurrer had been overruled. The suit was brought for an accounting and to recover franchise taxes for twenty years at the rate of 2 per cent of the annual gross receipts derived from a high power electric system maintained over twenty miles of highway in Tehama County.

In 1902 Tehama County granted to the Northern California Power Company, by ordinance number 30, a fifty-year franchise to construct and maintain on all county roads therein a system of high power electric lines free from franchise taxes or charges. It was not an exclusive franchise. In 1909 Tehama County granted another similar fifty-year franchise to Sacramento Valley Power Company, under the Broughton Act (Stats. 1905, p. 777), by ordinance number 36, under which it constructed and operated twenty miles of high power electric lines on a certain road in that county covered by the former license. The last-mentioned franchise provides in accordance with the statute, that, after the first five years, the licensee shall pay the municipality 2 per cent of the gross annual receipts of the business. Both franchises were granted for exactly the same purpose, and cover all county "bridges and highways . . . streets, alleys and avenues of the various unincorporated towns and villages in said Tehama County". In January, 1911, before the expiration of five years from the execution of the last-mentioned franchise, all of the properties of the Sacramento Valley Power Company, including the last-mentioned franchise of 1909, were transferred by deed to the Northern California Power Company. In 1919, the defendant, Pacific Gas and Electric Company, acquired title to both of said franchises and continued to operate the consolidated electric power systems without payment or demand for franchise tolls under the latter license. For twenty-two years the enterprise was conducted without any attempt to collect taxes. May 16, 1938, the plaintiff brought this suit for accounting of the gross receipts of the enterprise and for payment of the claimed franchise tolls under the 1909 license. A demurrer to the complaint was overruled and the defendant was allowed ten days in which to answer. The defendant failed to answer the complaint. Judgment by default was therefore rendered against it. From that judgment this appeal was perfected.

The appellant contends that it became the purchaser and is now the owner of both franchises granted for the identical

purpose of authorizing the construction, maintenance and operation of electric power lines on all roads, streets and highways in the County of Tehama; that the first franchise empowers it to maintain and operate all such lines free of charge; that although the second franchise does provide for a tax based on gross annual income from the business, the owner of both franchises has the option to determine under which license it elects to continue the operation of the business, and that it appears the enterprise was continued under the original license.

On the contrary, the respondent asserts that the franchise of 1909 was a contract granting to The Sacramento Valley Power Company a fifty-year privilege or license to operate power lines along the public roads of Tehama County in consideration of the payment of 2 per cent of its gross annual receipts therefrom after the expiration of five years from its issuance and that the defendant may not purchase and enjoy the fruits of that contract without paying the specified franchise tolls.

We are of the opinion the demurrer to the complaint should have been sustained for the reason that the complaint fails to state a cause, and because the statute of limitations bars the action. The facts alleged in the complaint clearly show that the Northern California Power Company held a prior, valid, blanket franchise, issued to it by the County of Tehama in 1902, to construct, maintain and operate for a period of fifty years a high-power electric system, including the necessary poles, wires and equipment on all the roads and highways in the county, without the payment therefor of franchise tax or tolls. It actually constructed and operated many miles of electric system over the highways of that county. December 7, 1909, the board of supervisors of Tehama County granted a similar fifty-year franchise to the Sacramento Valley Power Company, covering the same roads, streets and highways, and for precisely the same purpose for which the 1902 franchise was granted. This latter franchise, however, provided that, in accordance with the Broughton Act, after five years from the date of the franchise the licensee should pay to the County of Tehama 2 per cent of the gross annual receipts received from its enterprise. The Sacramento Valley Power Company constructed and operated under its franchise twenty miles of high-power electric poles and

wires along a particular highway in Tehama County. Before the five years had elapsed during which the last-mentioned company was exempt from payment of franchise tax, and on February 1, 1912, all of its equipment and franchise were purchased and transferred by deed to the Northern California Power Company, which did not replace the poles and wires, but continued to operate said twenty miles of electric lines in conjunction with its other high-power system in that county. October 3, 1919, all of said electric system, together with the properties of every nature incident thereto and the two franchises were acquired and transferred to the defendant, which consolidated the entire system and continued to operate under one system. No franchise tax or tolls were ever paid upon the twenty-mile system or at all. Many other miles of poles and wires were subsequently added to its system in Tehama County under the 1902 franchise. It is alleged that all of the defendant's high-power system was "used and operated . . . under the said Sacramento Valley Power Company franchise". But this is apparently incorrect as the complaint clearly alleges that most of the system was previously constructed and operated under the 1902 franchise. Moreover, the complaint subsequently alleges that the defendant claims to have consolidated the properties of the Sacramento Valley Power Company with its general system, and to have operated its entire system at all times under the 1902 franchise and not under the subsequent one. It is true the complaint alleges that 2 per cent of the gross annual receipts of the enterprise has not been paid, and that defendant, "though often requested, has refused to pay the whole or any part thereof". It is not alleged, however, when such requests were made. Under the well-established rule that upon demurrer the allegations of the complaint must be construed most strongly against the pleader, we must assume the requests were not made until just before the commencement of this action. The failure to demand tolls under the 1909 franchise for a period of more than twenty years furnishes the inference that both parties assumed the electric power business was being operated under the prior franchise of 1902 and that the taxes were therefore not due or payable. If the respondent's theory were true, the first instalment of tolls would have been due and payable December 12, 1914.

Yet no action was taken by the plaintiff to recover those taxes until this suit was commenced in 1938.

■ By the purchase and acquiring of the properties of the Sacramento Valley Power Company by the Northern California Power Company, the latter corporation acquired nothing it did not previously possess except the bare poles, wires and equipment of the twenty-mile line. It gained no new privileges under the last franchise. The grantee already owned the blanket franchise to construct, maintain and operate electric power poles, wires and equipment on all the roads and highways of Tehama County, including the one upon which the twenty-mile system had been erected. The defendant was authorized to pull up the poles and dismantle the wires on that acquired twenty-mile line and replace them with poles and equipment of its own construction without incurring a liability to pay the franchise tolls provided for in the latter franchise. That would furnish conclusive evidence of an intent to abandon the last franchise. It would, however, be an absurd, idle and unjust rule that would. require such useless destruction of property merely to avoid the taxes incident to a franchise under which the owner did not propose to operate its business. The law does not require the idle act of destroying property merely to replace like property to be used for the same purpose. (Sec. 3532, Civ. Code.)

■ The only question upon this appeal is whether the 1909 franchise was abandoned and the electric power system in Tehama County thereafter operated under the prior, valid franchise of 1902, which was issued for the identical purpose. There is no question that, so long as a public service is not discontinued, a franchise may be either lost or abandoned by subsequent conduct. The supplying of electric power in Tehama County was never discontinued on any of the lines belonging to the defendant. The question of the abandonment of a franchise must be determined from the intention of the parties ascertained from their declarations and conduct. The conduct of the plaintiff in neglecting to demand the taxes for a period of more than twenty years indicates its intention to consent to defendant's abandonment of the last franchise. Defendant's failure and refusal to pay tolls and its continuation to operate the entire system

with full authority to do so under the prior franchise indicates its intention to abandon the last license.

In 26 Corpus Juris, 1042, section 110, it is said with respect to the termination of a franchise:

"A franchise may be lost by subsequent abandonment after it has been exercised. The abandonment of a franchise is a question of intention. Nonuser *is a fact in determining it.* The disposal of property necessary for use in the exercise of a franchise will tend strongly to show the abandonment of such franchises."

In the present case the very statute under which the 1909 franchise was created specifically provides that it shall be forfeited by failure to pay the franchise tax. The act provides in that regard (Stats. 1905, p. 778):

"No percentage shall be paid for the first five (5) years succeeding the date of the franchise, but thereafter such percentage shall be payable annually; and in the event said payment is not made, *said franchise shall be forfeited."*

For twenty-two years no franchise tax was paid or demanded by the County of Tehama. Since the defendant owned the prior valid franchise to operate the electric system on all roads and highways of Tehama County the purchase of the Sacramento Valley Power Company's equipment certainly authorized it to maintain that line under its former blanket franchise without the payment of taxes or percentages of the gross annual income therefrom. The complaint indicates that is exactly what the defendant proceeded to do. To have deliberately waived its right to do so, and to have elected to operate under the 1909 franchise at the unnecessary cost of franchise tolls would be contrary to common sense, good business judgment and the purport of the very allegations of the complaint. The situation is similar to the owner of land who grants A an easement to travel over a particular roadway with any conveyance he elects to use for fifty years without paying for the privilege. The owner subsequently grants B a similar easement to travel the same road with an automobile for fifty years in consideration of $10 per year. A purchases B's easement and automobile, and proceeds to drive it over the same road. May the owner of the land thereafter collect from A $10 per year for driving his purchased automobile over the same road for which he held a prior, valid easement without pay, merely because he

bought B's easement and automobile? We think not. A acquired no new benefits so far as the easement is concerned, which he did not previously enjoy. He had a right to continue to travel the right of way in any conveyance under his prior easement. It seems to us the same principle applies to the present case.

The respondent relies on article XII, section 10, of the California Constitution, which provides:

"The legislature shall not pass any laws permitting the leasing or alienation of any franchise, so as to relieve the franchise or property held thereunder from the liabilities of the lessor or grantor, lessee or grantee, contracted or incurred in the operation, use, or enjoyment of such franchise or any of its privileges."

The foregoing provision has no application to the question which is involved on this appeal. The legislature has not attempted to pass a law exempting a lessor or lessee, a grantor or a grantee from liability incurred on account of the operation, use, enjoyment or privileges conferred or contracted in the construction, maintenance or operation of any electric power system in Tehama County or elsewhere.

This section does not prohibit the sale or transfer of a franchise (*City of South Pasadena* v. *Pasadena Land & Water Co.*, 152 Cal. 579 [93 Pac. 490].) Nor does it prevent the abandonment of a franchise, except where a public service is discontinued or when the enterprise affected thereby is relieved of obligations or liabilities previously incurred in the operation of the industry. It establishes no obstacle to acquiring a franchise and abandoning it so as to continue the service of the business under a former valid franchise which covers all benefits and privileges secured thereby. The case of *Oakland* v. *Great Western Power Co.*, 186 Cal. 570 [200 Pac. 395], upon which both parties to this action rely, appears to have determined that very point. It holds that the acquisition of a later franchise for the same purpose covered by a former one does not have the effect of terminating the prior license; that a later franchise granting the same privileges conferred by a former one, although accepted from the state, need not be used, and when it is not exercised the conditional tolls provided for therein are not due or payable, and that the power lines constructed under one franchise may be operated and used under another license. That is in ac-

cordance with common sense and justice and the exact letter of the contract. The case of *County of Inyo* v. *Hess*, 53 Cal. App. 415 [200 Pac. 373], upon which both parties to this action also rely, appears to support the defendant's contention that the mere fact that it purchased the 1909 franchise in no way precludes it from abandoning that license and proceeding to operate and maintain its entire electric system under its former, blanket franchise of 1902. In the Hess case Inyo County sought to collect 2 per cent gross annual income from a telephone system formerly constructed by Hess under a franchise issued to him by the county pursuant to the Broughton Act which provides for the payment of such taxes just as is contended in the present case. Hess' franchise was assigned to the Inyo Telephone Company which continued to operate the acquired system pursuant to the provisions of section 536 of the Civil Code. It was contended that the taxes imposed by the original franchise under the Broughton Act obligated the assignee to pay tolls as therein provided. The trial court so held and rendered judgment for the plaintiff. On appeal that judgment was reversed. The Supreme Court held:

"As we have seen, the right of the corporations to use the highways existed independently of the Hess franchise, and under the assignment thereof *they took nothing other than what they already had, namely, the right to occupy the highways with poles and lines of wire constructed by them. This right, in our opinion, implies the right to use the highways for the lines constructed by Hess and which they acquired by purchase.* . . . The operation of the lines by the corporations was not under the Hess franchise, but under an existing and superior right granted the corporations by section 536. As operated by the corporations, there was no gross revenue arising from the use, operation and possession of the Hess franchise. Their right to use the highways in operating such lines was not impaired by the fact that Hess, by a naked assignment, transferred the franchise to them."

The Hess case is merely the converse of the present case in one respect, but the principle involved in both cases is the same. In the Hess case the original franchise under the Broughton Act called for the payment of tolls based on the gross annual income from the enterprise. In the present

case the business was continued under the prior valid, existing franchise of 1902, which required the payment of no tolls.

Moreover, this action is barred by the statute of limitations. (Sec. 345, Code Civ. Proc.; *City of Los Angeles* v. *County of Los Angeles*, 9 Cal. (2d) 624 [72 Pac. (2d) 138, 113 A. L. R. 370].) A county may not wait for twenty-two years to demand or recover franchise taxes due or payable under the Broughton Act.

The complaint fails to state a cause of action, and the alleged cause is barred by the statute of limitations. The demurrer should have been sustained.

The judgment is reversed and the trial court is directed to render judgment for the defendant.

Pullen, P. J., and Tuttle, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 22, 1939, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 21, 1939.